65 So.2d 900

B. & H. TWIN MASTER CYLINDER CO., Inc. v. SCOTT.

No. 40748.

April 27, 1953.

Rehearing Denied June 1, 1953.

Lenfant & Villeré and Howard W. Lenfant, New Orleans, for defendant-appellant.

Ainsworth & Ainsworth, Harold R. Ainsworth, New Orleans, for plaintiff-appellee.

MOISE, Justice.

This is an appeal from a judgment in favor of the plaintiff corporation in the sum of $3,475, claimed to be due because of defendant's alleged breach of a contract to manufacture 1000 hydraulic cylinders.

The defendant denies any indebtedness whatsoever to plaintiff corporation and claims that his negotiations were entirely with one Joseph C. Hare, and that Hare had breached a commutative understanding had with him respecting the above patent.

The defendant Scott is the owner of a garage and machine shop. During April 1948, Hare and Alexander Blackman approached Scott for the purpose of having him assist them in perfecting a Twin Master Cylinder Hydraulic Brake. They submitted to Scott a freehand drawing of the device. For his work and assistance in perfecting the cylinder, Hare and Blackman promised to give Scott the exclusive right to manufacture the unit and a one-third (1/3) interest in the patent rights, when obtained. Hare states that such is not wholly correct, but corroborating circumstances confirm Scott's version. This agreement was commutative in form. Scott and his employees performed loyal allegiance and faithful services for more than a year, and Scott also furnished the necessary costs, equipment, materials and labor. A patent was issued under date of March 4, 1949—No. 79646, U.S. Patent Office, Series of 1948. Meanwhile, Hare had been working towards promoting and financing the sale of the units. After Scott had manufactured about twenty of the cylinders and applied them to various automobiles, in the experimental stage, he quoted *Hare* a price of $5.90 per unit on an order of 1000.

On August 8, 1949, Hare gave Scott a check signed by the "B. & H. Twin Master Cylinder Co., Inc., J. C. Hare, Pres., Leo S. Guenther, Treas.", which check was accepted by Scott as a part payment by Hare towards the money Scott had advanced in buying machinery and setting up equipment and paying for the necessary labor, etc., for the perfection and manufacture of the unit. Scott says Hare received $500 out of this check. Hare says, the money he received was from another source.

On the same date, August 8th, Hare, Mr. James S. Mason, General Agent for the Wabash Railroad in New Orleans, Mr. Alexander Blackman, Mr. Leo S. Guenther, a Certified Public Accountant of New Orleans, and Mr. Gerald B. Brown, a New Orleans Attorney, met in the office of Mr. Guenther in the National Bank of Commerce Building and signed articles incorporating the B. & H. Twin Master Cylinder Co., Inc. (These articles of incorporation were not recorded until August 12,

1949, in the records of Jefferson Parish, La.) Scott emphatically denies that he had any knowledge of the formation of this corporation. However, after the execution of these Articles of Incorporation, Hare, Guenther and Blackman went to defendant Scott's place of business and allegedly verbally confirmed the understanding which Scott had with Hare relative to the manufacturing of 1000 units for the price of $5.-90 per unit.

On September 13, 1949, as shown by the record, Hare dictated a letter, which was allegedly transcribed by Scott's secretary, addressed to himself (Hare), in which the progress of setting up the machinery for the cylinders was outlined and a request for $2,000 was made, as an additional advance toward the cost of manufacturing the cylinders. Scott says that this was done upon the suggestion and persistence of Hare. On this same day, Hare gave Scott a check for $2,000, signed by the "B. & H. Twin Master Cylinder Co., Inc., J. C. Hare, Pres., Leo S. Guenther, Treas." The manufactured units being well on the way to completion, Scott then insisted that Hare reduce to writing the verbal understanding. Hare informed Scott that he was unable to do this. The record is corroborative of this fact, because Hare was in no position to carry out his part of the agreement with Scott—Hare and Blackman had meanwhile, as shown by the Articles of Incorporation of the B. & H. Twin Master Cylinder Co., Inc., transferred 97% interest in the ownership of the patent covered by Serial No. 79646, Series of 1948, to said corporation. Scott was the forgotten man. Scott thereupon refused to manufacture the units until Hare negotiated with him. Upon this refusal, the plaintiff corporation filed the present suit.

The original petition sought recovery of $53,887.17 for alleged breach of contract—damages and money allegedly advanced on account of the contract. To this petition, Scott filed an exception of vagueness and an exception of no right and no cause of action. After defendant's exception of vagueness was sustained, plaintiff amended its petition, and prayed specifically for $3,887.17, representing the money allegedly advanced by the corporation and paid by Hare to the defendant on account of the contract in question.

It does not appear from this record that the corporation has a contract with Scott. There never was a resolution of the Board of Directors authorizing a contract. All transactions were with Hare. There is nothing in writing. Even the letter of September 13th (alleged to have been dictated by Hare) upon which plaintiff strongly relies, is not addressed to the corporation, but to Hare. Scott has established his commutative verbal agreemant with Hare by one witness and corroborating circumstances. Therefore, we accept the verbal understanding as true, because, hardly would any normal person, much less a business man, work as hard and spend as many hours and

money, and have his employees devote their time in working on the perfection of a device, as did Scott, without obtaining a compensable interest therein, together with the right of exclusive manufacture thereof. Scott has not profited. The plain letter of the Code should be conclusive:

> "No contract is complete without the consent of both parties. In reciprocal contracts it must be expressed. * *" LSA-C.C. Art. 1766.

Where in the record is Scott's consent relating to the making of a contract with the plaintiff corporation? At the time of the first payment by Hare to Scott, the articles of incorporation were not recorded and the corporation was incapable of contracting. At the time of the second payment, the letter relied on by plaintiff corporation was addressed to Hare, the person whom Scott had contracted with and dealt with from the very beginning.

> "* * * there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point." LSA-C.C. Art. 1798.

Scott's equivalent for his year's work and that of his employees, in perfecting the patent, was to be a one-third (⅓) interest in the patent and the exclusive right to manufacture the cylinder. The proposition was proposed by Hare. It was accepted by Scott who actually performed the work. Certainly, there was no contract with the corporation at this early date, because there was no patent in existence. What compensation is Scott to receive from the corporation for work of his employees and himself?

Article 1812 of the LSA-Civil Code declares:

> "Express consent must be given in a language understood by the party who accepts, and the words by which it is conveyed must be in themselves unequivocal; if they may mean different things, they give rise to error, which, as is hereinafter provided, destroys the effect of a contract."

What Scott was to receive as an equivalent was placed beyond his reach when the patent owner assigned a 97% of the patent rights to the corporation. Scott now cannot recover a ⅓rd interest in the patent, because he had no contract with the corporation—his contract was with Hare. The corporation cannot recover in this suit against Scott for the same reason—it had no contract. A successful wrong can never make a right.

For the reasons assigned, the judgment appealed from is annulled, reversed and set aside, and it is now ordered that plaintiff's suit be dismissed at its costs.

McCALEB, J., concurs in the decree.